UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Elaine Cruz, | Civil Action No.: 9:16-CV-03861-RBH |
| Plaintiff, | |
| v. | **ORDER** |
| Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Elaine Cruz ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The matter is before the Court for review of the Report and Recommendation (the "R&R") of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends affirming the Commissioner's decision. [ECF #27].

**Factual Findings and Procedural History**

This Court is tasked with reviewing the denial of Plaintiff's application for disability benefits. Plaintiff applied for disability insurance benefits ("DIB") on September 19, 2012, alleging disability due to hip osteoporosis, emphysema, chest pain, a thyroid problem, and back and leg pain. Plaintiff's claim was denied initially and upon reconsideration. After she requested and was granted a hearing, the ALJ denied her claim on September 23, 2015. At the hearing, Plaintiff amended her alleged onset date to October 3, 2013. Plaintiff's request for a review by the Appeals Council was denied, making the findings and determination of the ALJ the final decision of the Commissioner.

Briefly stated, In May of 2009, Plaintiff was treated by Palmetto Pulmonary and Critical Care Associates and Upstate Cardiology for Plaintiff's complaints regarding recurrent chest pains, shortness of breath, and coronary artery disease. She was diagnosed with chronic obstructive pulmonary disease at that time. [ECF #11-1, Ex. 1F]. Plaintiff underwent a left heart catheterization, selective coronary angiography, and left ventriculargram by John Bittrick, M.D. from May 6, 2008 to May 21, 2009. [ECF #11-1, Ex. 2F]. Plaintiff also sought medical care from October 2009 through November 2010 for left shoulder pain, back pain, and neck pain at Hillcrest Memorial Hospital. [ECF #11-2, Ex. 6F]. From February 2010 until October of 2010, Plaintiff's treating physician, Dr. Mohammed Rashid, treated her for hip pain, lower back pain, arthralgia, hypothyroidism, dyslipidemia, and osteopenia. [ECF #11-2, Ex. 7F]. Dr. Rashid then referred Plaintiff to Dr. Amir Agha, and in August of 2010, Dr. Agha founds her left hip to be tender, but otherwise unremarkable. He diagnosed Plaintiff with left trochanteric bursitis. [ECF #11-2, Ex. 7F]. Dr. Rashid treated plaintiff through September 2012 for hypothyroidism, dyslipidemia, osteopenia, fibromyalgia, bipolar disorder, as well as other mental conditions, such as depression. [ECF #11-2, Ex. 7F], and he again treated her through July 2013 for chest pain, fatigue, dizziness, shortness of breath, depression, suicidal ideations, homicidal ideations, athralgia, neck pain, back pain, osteopenia, and fibromyalgia. [ECF #11-3, Ex. 15F; ECF #11-4, Ex. 21F]. Dr. Rashid prescribed Lortab to Plaintiff to manage her pain. He continued to see Plaintiff through December 2014.

In June and July of 2013, Plaintiff received physical therapy for her pain. [ECF #11-5 and 11-6, Ex. 22F]. She also sought treatment at the Center for Rehabilitation and Pain Management for fibromyalgia, chronic neck pain, back pain, insomnia, anxiety, chronic headaches, and spondylosis. [ECF #11-9, Ex. 25F]. From April through December of 2014, she was treated for chronic anxiety disorder, fibromyalgia, and opioid dependence at the Center for Rehabilitation and Pain Management.

2

[ECF #11-11, Ex. 28F]. During this time, Plaintiff was also treated by Piedmont Psychiatric Services for depression and anxiety. [ECF #11-2, Ex. 10F]. Her treatment at Piedmont Psychiatric Services continued through March 7, 2013. The medical notes reveal that Plaintiff suffered from crying spells, scattered concentration, and sleep disturbances, as well as reports that she tried to kill herself. [ECF #11-3, Ex. 14F]. She was diagnosed with major depression. Plaintiff also sought treatment for mental illness at Piedmont Health Center through November 2014, where she was diagnosed with borderline personality disorder and admitted medicating with Lortab and Valium. [ECF #11-4, Ex. 18F; ECF #11-7, Ex. 23F].

From July 21, 2006 through September 24, 2010, Plaintiff was treated at Greenville Memorial Hospital for shortness of breath, nausea, and chest pain on multiple occasions. [ECF #11-1, Ex. 3F]. She presented to the emergency room at Greenville Memorial Hospital at least two times in 2012 for chest pain, left arm numbness, and depression. [ECF #11-3, Ex. 11F]. From May 16, 2013 through July 17, 2013, Plaintiff sought treatment again at Hillcrest Memorial Hospital for neck pain, hip pain, and back pain that she alleged occurred after a fall and was prescribed Lortab. [ECF #11-4, Ex. 20F]. In March of 2014, Plaintiff sought treatment at Greenville Medical Center for chronic interstitial lung disease and pneumonia. [ECF #11-8, Ex. 24F]. She sought treatment In May and September of 2014 at Hillcrest Memorial Hospital for chronic back pain, chest pain, shortness of breath, left hip pain, and lower back pain. [ECF #11-10, Ex. 26F]. Plaintiff presented to Greenville Memorial hospital in February and March of 2015 and was diagnosed with recurrent congestive heart failure, rheumatic heart disease with mitral stenosis, and mitral regurgitation. [ECF#12-1, Ex. 30F]. During this time period she began treatment at Carolina Radiology and at Cardio Thoracic Surgery. Plaintiff underwent miltral valve surgery at Cardio Thoracic Surgery. [ECF #12-2, Ex. 33F]. Plaintiff was treated again in May and

3

September 2015 at Hillcrest Memorial Hospital for chronic lower back pain and a degenerative joint in her foot. [ECF #12-5, Ex. 36F]. She was also treated in June and September of 2015 at Greenville Memorial Hospital for chest pain, chronic back pain, shoulder pain, coronary artery disease, hypertension, rheumatic heart disease, mitral stenosis, pneumonia, pulmonary edema, and blood in her cough. [ECF #12-7, Ex. 37F].

On January 26, 2011, Matthew Fox, M.D. conducted a consultative examination of Plaintiff and concluded she should avoid concentrated exposure to fumes, odors, dust, gases and poor ventilation, and stated she was limited to medium work. [ECF #11-2, Ex. #8F]. On November 5, 2012, Bruce Kofoed, M.D. conducted a consultative examination and concluded that Plaintiff had bipolar disorder and her stress tolerance and concentration were poor. [ECF #11-3, Ex. #12F]. On November 18, 2012, Roland Knight, M.D. conducted a consultative examination and diagnosed Plaintiff with obesity and polyarticular athralgia. [ECF #11-3, Ex. 13F]. On May 1, 2015, Charles, Parke M.D. conducted a consultative examination shortly after her mitral valve replacement surgery and installation of a pacemaker. He noted that it was premature to evaluate Plaintiff for a disability and that she should be re-evaluated in a few months. However, he provided limitations with respect to her ability to climb, stoop, crouch and crawl. [ECF #12-3, Ex. 34F].

The ALJ reviewed all of the medical history in the record, as well as Plaintiff's testimony at the hearing. The ALJ subsequently came up with several findings.

The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> (2) The claimant has not engaged in substantial gainful activity since October 3, 2013, the amended onset date (20 C.F.R. 404.1571 *et seq.*).

4

(3) The claimant has the following severe impairments: bilateral hip bursitis/steoarthritis, osteopenia, rheumatic heart disease status-post March 23, 2015 pacemaker, affective disorder, anxiety disorder and personality disorder (20 C.F.R. 404.1520(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).

(5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except she can never climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, crouch and crawl. She can frequently balance, stoop, and kneel. The claimant can occasionally be exposed to hazards associated with unprotected dangerous machinery or unprotected heights. She is able to understand, remember and carry out simple, routine tasks in a low stress work environment (defined as being free of fast-paced or team-dependent production requirements), involving simple work-related decisions and occasional independent judgment skills and occasional work place changes. She must have less than occasional interaction with the general public, and occasional interaction with co-workers. She can respond appropriately to frequent supervision. The claimant should not be openly exposed to controlled substances or prescription medications (such as work in a law enforcement evidence facility, forensic lab, pharmaceutical manufacturing plant, medical facility or pharmacy). The claimant would be absent from work one day per month due to her condition.

(6) The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565).

(7) The claimant was born on February 27, 1969 and was 44 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404. 1563).

(8) The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564).

(9) Transferability of job skills is not material to the determination of

> disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).
>
> (10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20
>
> C.F.R. 404.1569 and 404.1569(a)).
>
> (11) The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2013, through the date of this decision (20 C.F.R. 404.1520(g)).

[ECF #10-3, pp. 5-19].

On December 9, 2016, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #19, ECF #20, ECF #25], and the Magistrate Judge issued a Report and Recommendation ("R&R") on January 16, 2018, recommending that the Commissioner's decision be affirmed [ECF #27]. The Magistrate Judge considered all of the medical testimony within the record and determined that the ALJ properly addressed the relevant medical findings, as well as considered Plaintiff's testimony in determining that the ALJ's decision is supported by substantial evidence. [ECF #27, p. 20]. Plaintiff filed objections on January 30, 2018. [ECF #28]. Plaintiff objects to the recommendation of the Magistrate Judge based on the following arguments: (1) the ALJ placed too much emphasis on the reports of non-examining, non-treating agency consultants; and (2) the ALJ did not adequately consider the recommendation of Dr. Charles Parke. Defendant responded to these objections on February 13, 2018. [ECF #30]. This Court will now consider these objections in turn.

**Standard of Review**

I.  **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

II.  **The Court's Review of the Magistrate Judge's Report and Recommendation**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's

recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

**Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title

20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant

9

whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is

---

meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## Analysis

**I.     Undue Reliance Upon Non-Examining, Non-Treating Physicians**

Plaintiff's first objects to the Magistrate Judge's finding that the ALJ did not err in according inappropriate weight to the reports of non-treating, non-examining consultants. Plaintiff does not provide a detailed argument in his objections to support this claim, however, in her initial brief Plaintiff argued that a treating physician is a better source than a state agency consultant due to the nature of the treating physician's relationship. Additionally, Plaintiff argues that the consultant reports cannot be relied upon because the reports do not include the reason for the opinions rendered and do not include the consultant's professional qualifications, or the evidence considered and the weight given to that evidence.

Plaintiff specifically argues that the opinions of Drs. Kofoed, Horn, and Roper were given more weight than other opinions of treating physicians. It appears that one of Plaintiff's main arguments with respect to the apparent defectiveness of these opinions is that the consultants never saw Plaintiff, and their opinions are included within "standard form" documents.[3] Courts often accord greater weight to a treating physician's opinion because that physician has examined the claimant and has a relationship with the patient. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). A state agency medical consultant's opinion should be given weight insomuch as it is based on whether the opinion is supported by evidence in the record. SSR 96-6p. Where a state agency consultant's opinion is not supported by any evidence within the record, that opinion should be given less weight. *See Hall v.*

---

[3] Interestingly, within the argument for her second objection, Plaintiff relies upon a standard form document used by Dr. Parke to argue that Plaintiff was assessed as being unable to ever perform certain postural limitations.

11

*Harris*, 658 F.2d 260, 265 (4th Cir. 1981). The ALJ in this case gave partial weight to Dr. Kofoed's opinion, specifically noting that he was not a treating source, but otherwise relying upon his opinion to limit Plaintiff's ability with respect to her mental functioning within the RFC. [ECF #10-3, p. 18]. While the ALJ gave Dr. Horn's opinion partial weight with respect to Plaintiff's mental functioning, the ALJ actually deviated from Dr. Horn's opinion regarding her exertional and postural limitations, which Dr. Horn felt should be greater than what the ALJ actually assigned within the RFC. Dr. Roper's opinion would also appear to support a greater RFC than what ALJ limited Plaintiff to, as well, in that the ALJ limits Plaintiff's abilities to a greater degree than the opinion provided by Dr. Roper. Indeed, the ALJ thoroughly explained the basis for the RFC assessment and explained the basis for his opinion within the medical records, as well as in evaluating the credibility of Plaintiff's own alleged symptoms in finding she could only perform sedentary work. Plaintiff does not provide any legal support for her allegations that the reports are not useful because they do not include the consultant's qualifications, and this Court does not find this reasoning compelling given the detailed nature of the reports. In fact, Plaintiff does not point to any specific treating physician that she feels the ALJ improperly discredited. Instead, Plaintiff argues generally that the GAF scores should have been given more weight than the consultant reports. The ALJ gave limited weight to the actual GAF scores, as opposed to the treatment records from that provider in their entirety, and the ALJ still provided mental limitations within the RFC that were supported by the medical evidence of record. Accordingly, this Court's review of the medical evidence reveals that the ALJ did not err in assigning partial weight to the consultant report opinions and substantial evidence supports the ALJ's findings as to these opinions. This objection is overruled.

## II. Failure to Consider Dr. Parke's Recommendation

Plaintiff further objects to the Magistrate Judge's recommendation that the ALJ properly considered Dr. Charles Parke's opinion. Plaintiff argues that the ALJ made a determination of disability despite the fact that within Dr. Parke's report, he stated that she be evaluated again four to five months from the date of his evaluation on May 1, 2015. In other words, Plaintiff's argument is that the ALJ's decision is not supported by substantial evidence because he did not seek an additional consultative report. Moreover, Plaintiff argues that because Dr. Parke, in assessing Plaintiff a few weeks after her surgery, stated that Plaintiff "should never" stoop, this would significantly erode the sedentary occupational base such that she should be found disabled. This Court notes that Dr. Parke did not actually include that within his report; rather he checked a "never" box next to stooping in the form document he filled out in evaluating Plaintiff.

In reviewing evidence for a case, an ALJ may consider additional evidence when the ALJ finds the record insufficient to make a decision. 20 C.F.R. § 404.1520(b). Where evidence is inadequate for the ALJ to determine disability, the ALJ must seek additional evidence by re-contacting physicians or psychologists or other medical sources to determine if other information is available. 20 C.F.R. §§ 404.1512(a) and 404.1512(c). However, ultimately Plaintiff bears the burden of ensuring that the record is complete and detailed enough to allow the ALJ to make a decision.

Here, Dr. Parke gave a consultative report on May 1, 2015. His report notes that Plaintiff was four weeks post release from open heart surgery. Dr. Parke noted that Plaintiff is under physician's orders for minimal angulation and limitation of activities. He notes that any evaluation for disability would be premature and that she should be evaluated in 4 to 5 months for disability. Dr. Parke assessed on a form she could never climb stairs, ladders, bounce, stoop, crouch, or crawl. The ALJ gave this

13

decision limited weight because his opinions do not address the time period from the amended onset date through March of 2015 when her heart problems began. Plaintiff argues that Dr. Parke's recommendation that she be evaluated four to five months after her surgery "proves" the record was incomplete. However, this is not necessarily the case. First, Dr. Parke's does not opine that she would be found disabled throughout the time period for which she is seeking disability, or even that she would be found disabled in four or five months. Dr. Parke's statement is simply that it is premature to conduct a meaningful evaluation because she recently had surgery. Plaintiff's statement that Dr. Parke concluded she should never "climb stairs, ladders, bounce, stoop, crouch or crawl" is based on a chart wherein he checks "never" as her postural activities. However, not only did Dr. Parke premise the entire evaluation on his observation that Plaintiff still had an open wound in her right chest and should not be doing any of these activities, but he specifically noted next to evaluation of postural activities that "because of recent surgery cannot do any of these activities". [Ex. 34F]. He did not state that she could never do these activities, even upon recovery from surgery. The ALJ then accounted for her cardiac limitations by limiting the RFC accordingly. Second, the ALJ was not required to obtain a subsequent opinion unless he felt that he had "insufficient evidence" upon which to base his decision. Plaintiff appears to argue that despite the ALJ's detailed analysis of the evidence as a whole, had a subsequent evaluation occurred, it would have supported a finding of disability. However, speculation of what additional evidence may obtain does not warrant a remand. *Binion v. Shalala*, 13 F.3d 243, 247 (7th Cir. 1994) (citing *Granger v. Finch*, 425 F.2d 206, 208-09 (7th Cir. 1970)).

The ALJ not only noted the results of Dr. Parke's report, but he also considered an examination that occurred two months after Plaintiff's surgery and one month after the date Dr. Parke's report. The ALJ specifically included within his decision that in June of 2015, Plaintiff was admitted to the hospital

14

because she reported experiencing chest pains. Upon examination, she did not show any signs of a cardiac problem, and she was diagnosed with noncardiac chest pain. Her treating physician reported she could resume activities. Moreover, the ALJ also noted that Plaintiff underwent a successful pacemaker surgery, but still accounted for her heart condition by restricting her RFC to include sedentary work, placing additional postural limitations on the type of work she could perform, and noting she would be absent at least one day per month. Accordingly, this Court finds that the ALJ's decision was supported by substantial evidence. Finally, as was pointed out by the Magistrate Judge, the ALJ advised Plaintiff that she could obtain additional information as a result of Dr. Parke's findings, or otherwise request the ALJ to issue a subpoena for submission of records. [ECF #10-8, Ex. 27E]. Plaintiff did not take any action with respect to this letter. Accordingly, this objection is overruled.

## Conclusion

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to those objections, and the applicable law. For the foregoing reasons, the Court adopts the recommendation of the Magistrate Judge. [ECF #27]. The Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

Florence, South Carolina  
March 23, 2018

s/ R. Bryan Harwell  
R. Bryan Harwell  
United States District Judge